Good morning, Your Honors. My name is Adam Campbell, and I represent the appellants, the judgment creditors below Homer and Julie Savard, and if it pleases the Court, I would like to reserve five minutes of my time for rebuttal. Briefly, to put this case in context, the case started with a rebuild of the Savard's home after a fire. The Savards counterclaimed against their builder for construction defects in that rebuild. The insurance carrier for that builder, RTR Builders, Atain Insurance, did not defend but instead denied coverage completely. The parties, RTR Builders and my clients, Savards, then entered under what is known in Arizona as a Dameron Agreement and a stipulated judgment. We then sought to garnish the policies. We're here on this appeal because the district court below erred in granting Atain's motion for summary judgment and denying the summary judgment to the Savards. And basically, there are three issues across which the court erred. First of all, the court erred by not finding that we had demonstrated a duty to defend in order to validate the Dameron Agreement. There were allegations in the counterclaim that construction defects had caused property damage to the home, and that was sufficient under all of the insurance policies to invoke the duty to defend. The court also ignored the fact that that set of allegations was admitted by both parties in the joint statement of facts. So at that point, the court should have ruled that the duty to defend had indeed been shown. At that point, the Dameron Agreement becomes valid and the insurance company's only defenses are fraud and collusion, number one, which was not asserted or ever argued in this case, or two, that there was absolutely no coverage under the policies duty to indemnify that would have invoked, in turn, the broader duty to defend. What does the Kiwis case do for you? The Kiwis case, and I'm going to talk about the answer to the certified question from this court, helps us understand the issues in three ways. First of all, it talks about the vouching into the Dameron Agreement, the stipulated judgment that I just talked about. It also takes off the table one of Attain Specialty's arguments that there's a conflict of interest that precluded the Dameron Agreement. Number one, that doesn't preclude the duty to defend. You still have to defend if there's a conflict. And two, it pointed out that the fact that said issue that goes to both liability and coverage that causes the conflict has to be exposed. And Attain, in this case, has never actually pointed to any fact that causes a conflict. They've just simply said the existence of construction defects causes that conflict. I understood the import of the case to be that even if the duty to defend is breached, you can still raise no coverage to defeat one of these. And that's the third area that in which the case helps us. The defense becomes coverage, and the court in Kiwis gave a very important admonition at the end. If the insurance company can't prove the existence of no coverage or we fail to prove the existence of some coverage, then the Dameron Agreement goes away. But if the insurance company was wrong and there was coverage of some kind below, then the entire judgment must be paid by the insurance company. And that's important in this case because Attain chooses to argue that certain elements of the damages, certain elements of the claims were not actually covered under the policy. But at the end of the day, a lot of those arguments go to the damages. And that's what Kiwis reminds everybody cannot be questioned either under the guise of questioning the damages in the liability case context or in the guise of a coverage defense. But they also made several arguments the district court didn't reach, arguments that there were exclusions that applied. Correct. So even if we agree with everything you just said, the exclusions haven't been ruled upon, right? Those arguments? That's correct. The judge below in the district court ruled simply that there was no occurrence causing property damage. And I think we can show that there was. There was plenty of evidence in the record that there was water intrusion resulting from defects in grading, stucco parapets, roofing and walk decks. So there's the construction malpractice, let's say, the faulty construction allegations. And I looked and looked and I think the district court did too for indication of property damage as defined within the policy. And I think you're relying on water damage. Is that right? That's correct. Can you tell me what is the best shot you've got at that? The record showed property damage. The evidence is in all of the contractor estimates that indicate that the house had actually incurred damage from the water intrusion and that that damage was going to continue. Can you give me citations to the record? I know there are some just while you're looking. I know there are some indications in the record that there was concern that the rains were coming. But if you've got citations in the record that water damage occurred, that would be helpful. The actual letter was Exhibit R to our statement of facts. And it was two letters from La Costa Construction. And if you bear with me a second, I can find the excerpt. It was at Savard ER 024. The docket is 53-1. 53-1? 53-1. Thank you. And in those letters and also in the letters by the other contractors, the language of the letter was very important. It didn't simply say the rains were coming and were concerned something's going to happen to the house. It said there has been damage and the damage is going to get worse and the expenses are going to increase when the rains come. So that letter established the existence of the defects I outlined a moment ago and established the evidence that there was actual damage that had occurred during the policy periods. And at that point in time, the court should have ruled that there was evidence unrefuted, never disputed, that these construction defects had caused property damage. And then to talk for a moment about the exclusions, one of the exclusions that's important to think about here is also the one that says that any work of a subcontractor that causes damage or is damaged is covered under the policy. And that's it's in an exclusion and an exception back into the exclusion. But it's kind of interesting to point out that when the Arizona Court of Appeals analyzed that, the analysis kind of conflates. And the discussion of what's an occurrence causing property damage and what subcontractor work that falls under that exception, the facts, the analysis become the same. So even if the court had reached a discussion of that exclusion, which the court should have, because it should have read the policy as a whole, it would have still found under the Lenar case and the Desert Mountain Properties case that there was indeed coverage. And as I mentioned a moment ago, under the QIAS answer to the certified question and under prior case law in Arizona, the Painter case in particular, as soon as we had shown some coverage, which we did with the evidence I pointed out to the court a moment ago, that should have ended the discussion. Summary judgment should have been entered on behalf of the Savards, and the judgment as a whole enforced for payment. I see I still have a little bit more time even with my saving of rebuttal, but the court has some questions. If you'd like, great, thank you. Demlong, good morning. Good morning, your honors. William Demlong on behalf of Appellee Attains Specialty Insurance Company. May it please the court. In this particular case, again, it's the plaintiff or Savard's duty to show that this is a covered event, an occurrence that causes property damage. Again, Judge Bolton at the trial court level went through and detailed to find whether or not there was actual property damage, resulting property damage from any defect. The same inquiry that was just here was done with Judge Bolton and nothing came up. Again, I pulled this letter. This was not something that Judge Bolton addressed. The court can look at it. We don't believe that that shows actual resulting damage. The key house- Are you talking about ER 24? Correct. Thank you. Again, I tried to go through it really quick, your honor, but it again outlines the same things that Judge Bolton did in her order, as well as our pleadings of many, many construction deficiencies, but there was no cost. Well, first, there was no allegation that was proven of actual resulting water damage. And more importantly, there was never any costing that that was ever corrected. Again, this is a case where you had RTR Builder, our insured, walk off the job because of a dispute on money. There's claims of construction deficiencies, which went directly to the ROC. The ROC, they made a complaint within two weeks of them leaving the job. They left the job in May, and by early June, there was an ROC complaint talking about deficiencies, defects, things like that. Nothing in there argued resulting damage. Moreover, even their counterclaim in this case didn't argue resulting damage and didn't prove it. The couple key points that I'd like to make is, first of all, as the key house, however you pronounce it, key house case, which was decided about a year ago, reiterated. It didn't create new law. This was just the law that we cited before. The duty to defend and duty to indemnify are two different things. The duty to indemnify still requires proof of actual facts that brings it in within coverage. Allegations of property damage, resulting property damage, isn't sufficient. You actually have to show actual facts that then there is coverage for that particular matter. But what about ER 27? That's the letter, opposing counsel is looking at 24. ER 27 has one of several passing comments that concern me. It says, talks about the rapidly approaching annual monsoon season. And again, it was concerned that the rains were coming, and it says that will obviously cause additional damage and additional expense. Well, Your Honor, you have to look at the context. There was never any evidence that the additional damage was referring to additional water damage versus just additional damage because of other deficiencies. And so, and the record never really got into that. More importantly, Your Honor, there's no, this work's all been done, right? Everything's been fixed, the house is occupied or whatever is done with it. But after that fact, and again, this is in 2009, that's five years ago. No one's ever come forward and said, by the way, here's the water intrusion damages that we had to fix. So we don't- Well, but Judge Bolt didn't know any of that. The question is, she was looking at is whether the complaint really even alleged property damage, an occurrence and property damage are the two definitions she was concerned about, so that it would fall within coverage, right? I mean, it's sort of cheating to look now after the fact. She had to go with what she had. I would disagree. There's a difference between the allegations and the true facts. It's the true facts that determine coverage, not the allegations. I was talking about duty to defend. Okay. Same thing. The duty to defend is, again, you look to the complaint, but the company can go beyond the complaint and investigate and- Right. And so the complaint alleged that there was damage caused by this basically walking off the job. And that's why, I mean, I'm only telling you what you already know. Sure. There was concern expressed repeatedly that the rains were coming and the property was going to be damaged, and then it seemed to me that the focus was, well, was there damage by the rain or not, water damage, because I can't see anything else that constituted or fell within the definition of property damage. Am I missing something? I don't think so, Your Honor, because that's the focus that Judge Bolton had as well, and that was the focus of our discussion with her as far as, okay, show us in the record where there was actual resulting property damage from water intrusion. And the- Lacoste or any of the other expert reports actually say, by the way, we look for water damage and can't find any? I don't think they said that, but they didn't say, by the way, we have to correct these things because of water damage. Okay. And, again, Your Honor, the significance is it's their burden to pursue coverage, not for us. We're stuck with the exclusion, so if there's an exclusion, we're the ones that have to profit the evidence. But as far as triggering coverage, it's up to the insured or, in this case, the assembly. I understand the burden of proof. It wasn't a trick question. I'm just trying to hear the guy at the microphone, and so that's why I asked. Okay. The so in any case, and also when you were talking about the duty to defend, the duty to defend, whether or not the company should have defend this matter or not is really a tertiary issue in the sense that the duty to indemnify is separate and the standard is separate. Just like the key has said, these other cases, you could breach the duty to defend, but still not have to indemnify. And to indemnify, you still have to get back to the resulting property damage. Now, and again, I think the key has cleared up a lot of the arguments made by plaintiff's counsel in the sense that, again, it reiterates that the duty to defend, duty to indemnify are separate matters. Duty to indemnify requires actual facts of proof. None were shown, so therefore, under these circumstances, we would prevail. Now, counsel makes an argument about the defects of the individual subcontractors. Again, you have to have some kind of resulting damage. There wasn't any. The fact that the window installer messed up and didn't have a square window in, but there wasn't any resulting damage, or the blinds people only put in half the blind, not the other half. It was incomplete work. Those individual items don't create a resulting damage. If the court doesn't have any questions on some of these, you know, the occurrence of property damage, I'd like to just talk about some of the exclusions real quick. Granted, we believe that the court should just affirm what Judge Bolton did and affirm the summary judgment motion based upon the fact that the plaintiff has not met their burden of proof. But even if you get past the coverage issue, then you still have to go to the various exclusions. And the exclusions, there's a couple I just want to point out, and frankly, Your Honor, I may be done early. A couple of them. First of all, it's a new building construction issue. We talked about that in our pleading. There was a response that, well, gee whiz, this is ambiguous. This wasn't new construction. We'd just like to point out that this building, the old fire burned building was torn down, completely built from scratch with new plans, additional rooms, and a casita. So to suggest that this isn't a new building, we believe just contrary to the plain meaning of the term new building. You know, if half your house burns down and you've got to repair that but other parts are up, that of course is reconstruction. We don't think that this would be considered that. One of the arguments also plaintiff made on that was that one of the last policy year didn't have a new building construction exclusion. The problem with that is the last policy year started August of 2008 and the insured walked off the job in May of 2008 and made the ROC complaint in June of 2008. So therefore, that policy wouldn't be implicated anyways. And because there's no claim that damage continued throughout the period, you don't have this continuous trigger issue coming up either. So we believe the new building construction exclusion would absolutely apply. There's also, and this is, now we're just getting into nuances, but the coverage exclusions J-5 and 6, this talks about the, you know, workmanship and things like that while on the job site. In this case, it's a little unique in that because they walked off the job site, everything and possession was never taken in the sense of a normal construction context. Those provisions would apply and any kind of defects relating to that would not be covered as well. So, the, and again, they've made a reasonable expectations argument. Unless the court has any questions on that, we'd just defer to our pleadings. Basically there's been no representation to the insurer on coverage and so there's no basis for finding that there is a reasonable expectation contrary to the plain ordinary meaning of the policy. So, unless the court has any questions, I'm not going to keep talking. Thank you, Your Honor. Thank you, Mr. Demo. Your Honors, first of all, I would like to start by correcting something that Judge Christen pointed out. I was actually looking at the letter that starts at ER 24 and the second letter at 27. The defects are in 24. The discussion of the ongoing, already occurring property damage is in page 27. Oh, thank you. You had me flipping back and forth, but I think we've got it now. Thank you. Thank you, Judge. I also want to correct something that came up during my opposing counsel's argument. It's absolutely untrue that there was no allegation of property damage in the record. The judge didn't point it out, but it is clearly in the counterclaim. It was paragraph 28, followed the paragraph 27 that talked about the defects. We laid out the defects. We alleged that property damage was caused. The allegation was clearly in the record. There also was a joint statement of fact, paragraph 19, in which those allegations were admitted. So, at this point in time, there can be no question that there were allegations of an occurrence, construction defects, causing property damage, in order to at least invoke the duty to defend. It's also moving to the duty to indemnify. It's important to point out here that the expert reports that Judge Christin was asking about have never been refuted, nor did the insurance company investigate to find out the existence of no property damage. So, there was never any attempt by the insurance company to come in and analyze what was going on at this house and determine if their coverage defenses were adequate. And that's something that's not going to be refuted. What if they guessed right? If they guessed right, that there was absolutely no coverage, the Damron agreement No damage. I didn't ask a good question. Forgive me. What if the insurance company didn't go look, denied coverage first and looked later sort of thing, but in fact guessed right and there hasn't been evidence of property damage? In the general sense of there not being any evidence of property damage, then the Damron agreement would go away. There would be no judgment to enforce at that point. No duty to defend or duty to indemnify, right? Yes. Okay. And so, this really turns on this factual point, if you will, the factual point about whether or not there was property damage, right? That's true. Okay. And we've pointed to the evidence in the record. And it is important to look at the point of view that this was subcontractor work. I also wanted to point out that But why? Why is it important to subcontractor work? Because under the Lenar case and the exclusion and exception back end, if subcontractor work is damaged or causes damage, it's covered. Oh, thank you. And I did also want to point out something that I don't believe is in the briefs but is in the record that, and I think Attain actually attached it to their statement of facts, there is a deposition of my client, Homer Savard, in which he talks about loss of use of the residence during the construction and loss of use under the policy can be property damage as well. So even though if there were no property damage, the case would go away, there certainly is enough evidence to have shown that Attain's coverage defenses were no avail. That argument's not in the briefs, did you say? It's not in the briefs. Was it raised with Judge Bolton? Or are we just hearing it for the first time now? I know it was brought up in their statement of facts. I don't recall if we actually argued it in the motion below, Judge. A couple of moments on the exclusions. As you heard from Mr. Demlong, the new building exclusion is not in all policies. And there is evidence in the record that Attain knew that RTR builders at least had a misconception about what constituted new construction versus restoration and rebuild work after insurance losses. And they were auditing the construction in those audits and on those applications. This project was specifically mentioned. So it was up to Attain to explain why this coverage exclusion was being added to the policy. Why was it up to Attain to come to – why did they have a duty to tell your client, hey, you're operating outside your coverage? Because they were adding what – they were adding an exclusion to the standard language of the policy that was not standard, and they were applying it in the context of knowing that this particular builder had at least put facts out on the table showing that maybe they were doing work that Attain would consider new construction, but the builder did not. Well, they both were – it seems to me that both parties then arguably were on notice of the fact that there may be work outside the scope of the coverage. Certainly your client – or rather, RTR, you know, knew the terms of its policy as well. So is there some legal authority that supports your argument that the insurer has to come forward and put them on notice? Yes, Your Honor. It's the reasonable expectations cases like Gordoneer and Darner that are cited, I think, in both briefs. Okay. And there's a couple – I think it's number three and four of the scenarios under which the reasonable expectations of the insured come into play, and it's those factors that apply to the facts. Okay. Thank you. I've read those. Thank you. And then the last thing I wanted to mention was on the J-5 and 6 exclusions, and this goes to a legal issue which, again, the Court did not address below but has been raised by my opponent here on appeal. Both of those exclusions, as he admitted, apply only during construction. As Attain has also admitted, the contractor abandoned the work. Under the definition in every one of the policies of the products completed operations hazard, that abandonment creates the decision or fiction under the policy that the work is completed. So you move from ongoing operations coverage to products completed operations coverage, so these exclusions would never come into play to exclude the coverage for my clients. I see I have a little bit more time, but at this point, if the Court has any other questions, I'd be happy to answer them. Okay. Thank you, Mr. Campbell. Thank you, judges. Mr. Dimong, thank you. The case just argued is submitted and will stand in recess. Judge, were you going to visit the students? Yes, but do you want me to do that afterwards? After. I just wanted to. Yes. Yes, I will. We're happy to have some visitors here. We're going to go and confer now in our conference room, after which Judge Kristen is going to come out and chat with all of you. Thank you for coming, and we'll stand in recess. All rise.
judges: Hawkins, Silverman, Christen